**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VENETEC INTERNATIONAL, INC.,<br><br>                  Plaintiff/Counterdefendant,<br>vs.<br><br>MEDICAL DEVICE GROUP, INC.,<br><br>                  Defendant/Counterclaimant. | CASE NO. 06CV83 IEG (WMc)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>(Doc. No. 77) |

Presently before the Court is Medical Device Group's ("defendant") motion for summary judgment of non-infringement. (Doc. No. 77.) Venetec International ("plaintiff") opposes the motion in part. For the reasons stated below, the Court grants the entire motion.

**BACKGROUND**

Plaintiff alleges that defendant's device infringes claims 1, 4, 5, and 19 of U.S. Patent No. 5,827,230 ("230 patent"); claims 1, 4-6, 8, 10-12, and 15 of U.S. Patent No. 6,290,676 ("676 patent"); and claims 1, 2, 6, 8, and 14 of U.S. Patent No. 6,786,892 ("892 patent").[1] Each of the patents-in-suit is for a catheter anchoring system "which securely interconnects an indwelling catheter with a tubing and securely anchors such interconnection to a patient's skin." (230 patent, at 1:21-24.) Prior to the patented devices, medical professionals taped a catheter in place on a patient's skin. With the patented devices, catheter securement is easier because "the nurse simply

---

[1] Collectively, these are the "patents-in-suit."

1  locates the catheter adaptor generally above the retainer, and presses the adaptor into the retainer."
2  (Id. at 2:37-39.)  The retainer has slots to accommodate the radially extending member (e.g., an
3  annular collar or ring) around the catheter adaptor.  When the medical professional pushes the
4  adaptor's collar/ring into one of the slots, the device snaps in and does not move in the up-down or
5  side-to-side directions.

6  The allegedly infringing device is defendant's Stable-Line Device for securing Foley
7  catheters.  "Foley catheters are flexible, stretchy tubes used to drain urine from the bladder."
8  (Opp., at 3.)  The Foley catheter has two internal passageways: one for draining urine ("drainage
9  arm"), and a side passageway with an inflation arm which has a balloon at the tip ("inflation
10  arm"). (Memo. ISO Motion, at 3; Opp., at 3.)  After inserting the Foley catheter into the patient,
11  the medical professional injects liquid or air into the balloon to hold the catheter in the patient.
12  The drainage arm and inflation arm converge (and branch off) at what is called the "junction" or
13  "Y-junction." (Def. Exhibit 59, Fig. 1.)  Foley catheters are typically inserted into the bladder
14  through the urethra, although they can also be inserted through a pierced hole in the patient's
15  abdomen.  (Pls. Exhibit 543.)  The Foley catheter has an anchor pad attached to the patient's skin,
16  but the retainer on top of that pad has a rotating base.  (Memo. ISO Motion, at 3.)  Therefore, the
17  retainer itself can pivot, and the catheter can move as the patient moves.  (Id.)

18  Plaintiff filed its complaint for patent infringement on January 13, 2006.  (Doc. No. 1.)
19  The Court conducted a Markman Hearing on February 16, 2007 and issued its claim construction
20  ruling on March 6, 2007.  (Doc. No. 74.)  Defendant moved for summary judgment of non-
21  infringement on June 1, 2007.  (Doc. No. 77.)  Plaintiff filed its opposition on June 25, 2007.
22  (Doc. No. 93.)  Defendant filed its reply on June 29, 2007.  (Doc. No. 96.)  The Court held oral
23  argument on July 9, 2007 and took the matter under submission.

24  **LEGAL STANDARD**

25  Summary judgment is appropriate where "there is no genuine issue as to any material fact
26  and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);
27  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  To determine the existence of a genuine
28  question of material fact, the Court views the evidence and resolves doubt in favor of the non-

1  moving party.  Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed Cir. 2001).

2  In the context of patent litigation, a patent holder can prove infringement either literally or
3  through the doctrine of equivalents. "Infringement is assessed by comparing the accused device to
4  the claims; the accused device infringes if it incorporates every limitation of a claim, either
5  literally or under the doctrine of equivalents.  If, however, even one claim limitation is missing or
6  not met, there is no literal infringement."  MicroStrategy, Inc. v. Bus. Objects, S.A., 429 F.3d
7  1344, 1352 (Fed. Cir. 2005) (internal quotations and citations omitted).  The doctrine of
8  equivalents requires an "insubstantial" difference between the claimed invention and the accused
9  product; in other words, "the accused product . . . performs [1] the substantially same function [2]
10 in substantially the same way [3] with substantially the same result as each claim limitation[.]"
11 Aquatex Indus., Inc. v. Technique Solutions, 479 F.3d 1320, 1326 (Fed. Cir. 2007) (emphasis
12 added).  Summary judgment is inappropriate where there is a factual dispute whether the allegedly
13 infringing device includes a claim limitation.  Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363,
14 1375 (Fed. Cir. 2004).  Summary judgment is appropriate, however, where parties do not dispute
15 any facts regarding the accused product, but instead disagree over interpretations of the court's
16 claim construction.  Gen. Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997).

**DISCUSSION**

**A.  Adaptor**

19  The Court construed "adaptor" to mean "[a]n interconnector between the catheter and
20 another fluid line, wherein the adaptor is not integral with the catheter."  In the interests of
21 conserving judicial resources, plaintiff does not oppose entry of summary judgment of non-
22 infringement for defendant with respect to all asserted claims in the 676 patent.

23  MDG's device does not literally infringe plaintiff's device on this element because, in the
24 Foley catheter securement device, the adaptor is integral with the catheter.  (See Def. Exhibit 68
25 (conceding that plaintiff would not pursue literal infringement on "adaptor" claim, following the
26 Court's ruling on claim construction).)

27  Furthermore, during prosecution of the 676 patent, the applicant argued its claims were
28 patentable because the adaptor was separate from the catheter.  (Def. Exhibit 506, at 5-6.)  The

applicant emphasized the distinction between the catheter and the adaptor in response to a rejection that the claim was obvious. (Id. at 6.) Where "the applicant clearly and unmistakably surrendered during prosecution" some particular subject matter, the applicant "cannot recapture under the doctrine of equivalents the surrendered subject matter." Cortland Line Co., Inc. v. Orvis Co., Inc., 203 F.3d 1351, 1360 (Fed. Cir. 2000). Even if plaintiff could argue for the doctrine of equivalents, the Court finds the doctrine would not apply here. In defendant's device, the adaptor is integral with the catheter. Therefore, defendant's device does not perform its function in substantially the same way as plaintiff's device, wherein the adaptor is not integral with the catheter. Summary judgment on all asserted claims of the 676 patent is appropriate.

In addition, defendant argues for summary judgment on claims 1, 2, and 6 of the 892 patent. These claims reference an "adaptor" but do not require it. The Federal Circuit has explained when a court should construe a limitation in the claim preamble as part of the claim itself:

> A claim preamble has the import that the claim as a whole suggests for it. If the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is necessary to give life, meaning and vitality to the claim, then the claim preamble should be construed as if in the balance of the claim. Indeed, when discussing the "claim" in such a circumstance, there is no meaningful distinction to be drawn between the claim preamble and the rest of the claim, for only together do they comprise the "claim". If, however, the body of the claim fully and intrinsically sets forth the complete invention, including all of its limitations, and the preamble offers no distinct definition of any of the claimed invention's limitations, but rather merely states, for example, the purpose or intended use of the invention, then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation.

Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999) (internal quotations and citations omitted).

The Court finds that the claim preamble recites claim limitations and is necessary to give "life, meaning and vitality" to claims 1, 2, and 6 of the 892 patent. In these three claims, the patent claims "[a]n anchoring system for use with a catheter having an adaptor with a radially extending member projecting therefrom[.]" The components of the anchoring system include a retainer with channel portions "sized to surround at least a portion of the adaptor through an arc of greater than 180° about said longitudinal axis." (892 patent, at 24:14-18.) Because the channel portions must be sized to fit the adaptor, the claim preamble, which explains the adaptor's design,

1 recites a claim limitation and gives "life, meaning, and vitality" to the claims. Therefore, summary
2 judgment on claims 1, 2, and 6 of the 892 patent is likewise appropriate.

3 **B.     Radially Extending Member**

4     The Court construed "radially extending member" to mean "[a] member extending in the
5 direction of the radius, which is perpendicular to the longitudinal axis of the tubular body."

6     The Court finds that defendant's device does not literally infringe because the inflation arm
7 extends from the main body of the catheter at a 40-45 degree angle. Under the plain language of
8 the Court's construction, the radially extending member extends in the direction of the radius, and
9 the radius is positioned perpendicularly to the longitudinal axis. Therefore, the radially extending
10 member extends in a direction that is perpendicular to the longitudinal axis. Merriam-Webster's
11 Dictionary defines "perpendicular" as "being at right angles to a given line or plane." The
12 dictionary likewise defines "right angle" as "an angle of 90°". Because the radially extending
13 member extends at a 90° angle, the Court rejects Venetec's argument that the inflation arm literally
14 infringes by extending radially and laterally.

15     The Court rejects Venetec's argument that any portion of the inflation arm extends in a
16 direction perpendicular to the longitudinal axis. Venetec identifies a section of the inflation arm,
17 1/16 to 1/8 of an inch in length, which purportedly extends perpendicular to the longitudinal axis.
18 (See the section labeled "A" in Opp., App. B.) Although this section appears in plaintiff's
19 diagrams of its device, the Court has reviewed the actual Foley catheter and finds that no such
20 perpendicular section exists. Plaintiff's expert testified that section "A" is perpendicular only if
21 the catheter is visualized with certain pieces missing. (See Layton Depo., at 155:3-4 ("If I remove
22 the spur out of there, then it's perpendicular"); 170:20-21 ("And you have that portion that you
23 take out of there"); and 170:25—171:1 ("When I remove the fill at the round, the fill-in, they're
24 both perpendicular").)

25     Even if a medical professional temporarily extended the inflation arm at a 90-degree angle
26 when inserting the Foley catheter into defendant's device, the Court finds no literal infringement
27 because the claims describe the radially extending member as "positioned" within the lateral slot.
28 (See, e.g., 230 patent, claim 1, at 22:12-13.)

1  The Court declines to apply the doctrine of equivalents because no reasonable jury would conclude that a 40-45 degree inflation arm is equivalent to a 90-degree radially extending member. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39 (1997). Venetec's argument that the precise angle is irrelevant "would vitiate a claim limitation," i.e., the requirement that the member extend "radially," where the radius is perpendicular to the longitudinal axis. See Tronzo v. Biomet, Inc., 156 F.3d 1154, 1160 (Fed. Cir. 1998).

Therefore, summary judgment is appropriate wherever a radially extending member is claimed, including claims 4 and 5 of the 230 patent and all asserted claims of the 676 patent. However, plaintiff asserts that claims 1 and 19 of the 230 patent and all contested claims of the 892 patent reference, but do not require, the radially extending member. Plaintiff's argument contradicts the deposition of its expert, who testified that "radially extending member" is a limitation of all the asserted claims in the 230 and 892 patents. (Layton Depo., at 117:3—118:25.) Plaintiff's argument is also inconsistent with its Final Infringement Contentions, which claim the radially extending member as a limitation of all asserted claims in all patents. (See Def. Exhibit 64.) By failing to seek the Court's Order to modify its final infringement contentions, plaintiff violated Patent Local Rule 3.7.[2] See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1366-68 (Fed. Cir. 2006) (affirming district court's enforcement of local rule under abuse-of-discretion standard). This violation warrants summary judgment for defendant on all claims in the 230 and 892 patents that reference the "radially extending member".

In addition, with respect to the 230 patent, the Court rejects plaintiff's argument as

---

[2] Patent Local Rule 3.7 reads: "Amendment or modification of the Preliminary or Final Infringement Contentions . . . may be made only by order of the court, which will be entered only upon a showing of good cause." In O2 Micro, the district court enforced a similarly worded local rule and denied plaintiff's motion to amend its final infringement contentions because plaintiff failed to show "good cause." 467 F.3d at 1361. Limiting plaintiff to the theory set forth in its unamended infringement contentions, the court granted the defendant's motion for summary judgment of non-infringement. Id. at 1362. Reviewing for an abuse of discretion, the Federal Circuit affirmed the district court's enforcement of the local rule. Id. at 1366-68. Applying de novo review, the Federal Circuit also affirmed the grant of summary judgment. Id. at 1369. The Federal Circuit relied on the exclusion (under the local rule) of the untimely infringement theory and arguments that plaintiff submitted in opposition to the defendant's motion for summary judgment. Id. Therefore, O2 Micro is authority for the proposition that this Court may grant summary judgment of non-infringement where plaintiff fails to comply with the local rule on amending final non-infringement contentions and submits arguments in opposition to summary judgment that are inconsistent with those contentions.

1  incorrect on the merits. Applying the Pitney Bowes rule, the Court finds that "radially extending
2  member" recites limitations of claims 1 and 19 of the 230 patent and "is necessary to give life,
3  meaning, and vitality" to those claims. In these claims, the patent claims a retainer in an anchoring
4  system which includes a lateral slot with a longitudinal length "so dimensioned to substantially
5  equal the thickness of the radially extending member[.]" (230 patent, at 22:6-8.) The claim
6  preamble explains that the radially extending member "projects from the tubular body." The
7  claim's description of the lateral slot's dimensions makes sense only in the context of the
8  preamble's description of the radially extending member as a projection from the tubular body.
9  Therefore, summary judgment for defendant on claims 1 and 19 of the 230 patent is appropriate on
10 both procedural and substantive grounds.

11 **C.    Longitudinal Axis**

12      The Court construed "longitudinal axis" to mean "[a] fixed axis extending in the
13 longitudinal direction of the retainer."

14      At the Markman hearing, plaintiff proposed construing "longitudinal axis" to mean "a
15 center line that extends in the longitudinal direction of the retainer." (Def. Exhibit 537, at 3.)
16 Defendant proposed construing "longitudinal axis" to mean "a fixed axis in a longitudinal
17 direction across a top surface of an anchor pad." (Id.)

18      Because the Court construed the longitudinal axis to be fixed relative to the retainer (rather
19 than the anchor pad), the Court declines to grant summary judgment to defendant on the
20 "longitudinal axis" limitation. A reasonable jury could find that defendant's device has a
21 "longitudinal axis" fixed relative to the retainer, even though the axis rotates freely with respect to
22 the anchor pad.

23 **D.    Catheter**

24      The Court construed catheter to mean "[t]ubular medical device for insertion through the
25 skin of a patient."

26      The specifications of the patents-in-suit explain that plaintiff's device "relates in general to
27 a percutaneous catheterization system." (230 patent, at 1:20-24; 676 patent, at 1:18-22; 892
28 patent, at 1:20-24.) In briefs submitted for the Markman hearing, plaintiff repeatedly equated a

percutaneous catheter with a catheter inserted through the skin. (See Doc. No. 96, at 8-9 (citing references).) Despite its consistent position at the Markman hearing, plaintiff now backtracks and argues the phrase "through the skin of a patient" did not limit the term "catheter" to a percutaneous catheter. Plaintiff's new expert claims the Court's construction is not limited to a "percutaneous catheter" because that precise phrase did not itself appear in the construction. (Layton Depo., at 91:7-13.)

Defendant's device is used with a Foley catheter, which a medical professional passes through the patient's urethra to the bladder. Plaintiff's expert previously conceded a Foley catheter is not a percutaneous catheter. (Frankhouser Depo., at 207:9-11.) Even here, plaintiff concedes that a percutaneous catheter enters the patient only "by piercing the skin", which defendant's device does not. (Opp., at 20.)

In the Court's claim construction of "catheter," it meant a percutaneous catheter. In light of plaintiff's claim construction briefs equating "percutaneous catheter" with a catheter inserted through the skin, the Court found it unnecessary to mention "percutaneous catheter" explicitly in the Order on claim construction. The Court also rejects plaintiff's argument that "through the skin" is broad enough to encompass inserting a catheter through a natural orifice of the body.[3] Because a percutaneous catheter pierces the skin of a patient, the ordinary way of inserting the Foley catheter into the patient (i.e., through the urethra) does not create a genuine issue of fact on material infringement.

Even though a Foley catheter is not ordinarily inserted "through the skin of a patient," however, plaintiff nonetheless argues for literal infringement because defendant's device can be used for suprapubic catheterization. In suprapubic catheterization, a needle pierces the skin and abdominal wall to insert the Foley catheter into the bladder. (Layton Decla. ¶ 40.) Plaintiff bases this allegation of literal infringement on a passing statement in defendant's patent application that its device "may be adapted to retain . . . suprapubic catheters." (Pl. Exhibit 519, at 8.) Plaintiff also claims that one size of Foley catheter that can be used with defendant's device is capable of

---

[3] Plaintiff bases this argument on an inapplicable analogy to throwing a rock through an open or closed window. The throwing of rocks is unrelated to the Court's analysis of the medical technology issues in the present litigation.

1  percutaneous introduction into the bladder. (Opp., at 22.) The Court finds this evidence to be
2  speculative and insufficient to create a genuine issue of fact on non-infringement.

3  Similarly, plaintiff cannot avoid summary judgment of non-infringement through the
4  application of the doctrine of equivalents. "A patent applicant may limit the scope of any
5  equivalents of the invention by statements in the specification that disclaim coverage of subject
6  matter." Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l Inc., 389 F.3d 1370, 1376
7  (Fed. Cir. 2004). In its Order on clam construction, the Court observed that Federal Circuit
8  precedent authorized the Court to limit the construction of terms "when the scope of the invention
9  is clearly stated in the specification, and is described as the advantage and distinction of the
10 invention[.]" On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 1340 (Fed. Cir.
11 2006). Here, the specification limits the scope of plaintiff's device to percutaneous catheterization
12 and describes the benefits of plaintiff's device in relation to percutaneous catheterization. Plaintiff
13 cannot now assert that its device is equivalent to a device designed for a catheter not inserted
14 percutaneously.

15 Therefore, summary judgment is appropriate wherever a "catheter" is claimed, including
16 all contested claims of the 676 patent. Plaintiff claims "catheter" is recited, but not required, in all
17 asserted claims of the 892 patent.[4] As with "radially extending member," plaintiff's argument
18 contradicts its final infringement contentions and violates Patent Local Rule 3.7. In light of the
19 claims' extensive description of the anchoring system and/or retainer designed to hold the catheter
20 in place (consistent with the requirements of percutaneous catheterization), the Court finds the
21 reference to "catheter" in the claim preamble "is necessary to give life, meaning and vitality to the
22 claim". Therefore, for procedural and substantive reasons, summary judgment is appropriate on
23 all asserted claims of the 892 patent.

24 **CONCLUSION**

25 The Court **GRANTS** defendant's motion for summary judgment of non-infringement on
26 all asserted claims of all patents-in-suit for the following reasons:

27 **230 patent:** Substantively, all asserted claims are not infringed because defendant's device

28

---

[4] "Catheter" does not appear in the asserted claims of the 230 patent.

lacks a "radially extending member." Procedurally, Patent Local Rule 3.7 forecloses defendant's argument that claims 1 and 19 reference, but do not require, a "radially extending member."

**676 patent:** All asserted claims are not infringed because defendant's device lacks an "adaptor," "radially extending member," and "catheter."

**892 patent:** Substantively, all asserted claims are not infringed because defendant's device lacks a "catheter," and claims 1, 2, and 6 are not infringed because defendant's device lacks an "adaptor." Procedurally, Patent Local Rule 3.7 forecloses defendant's argument that all asserted claims recite, but do not require, a "radially extending member" or "catheter."

Defendant's counterclaims for declaratory and injunctive relief are the only remaining claims in this litigation. The parties **SHALL APPEAR** before the Court for a status hearing on defendant's counterclaims on Tuesday, September 4, 2007 at 10:30 a.m.

**IT IS SO ORDERED**.

DATED: August 3, 2007

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**